RACHEL E. KAUFMAN (CAL BAR NO. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Attorney for the Plaintiff and the putative Classes*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER BAKER, individually, and on behalf of all others similarly situated, | NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY DEMAND** |
| AMERICAN ADVISORS GROUP, INC., a California corporation, | |
| Defendant. | |

Plaintiff Tyler Baker ("Plaintiff" or "Baker") brings this Class Action Complaint and Demand for Jury Trial against Defendant American Advisors Group, Inc. ("Defendant" or "AAG") to stop the Defendant from violating the Telephone Consumer Protection Act by placing telemarketing phone calls to consumers without consent, including those who registered their phone numbers on the National Do Not Call registry ("DNC") and who expressly asked for the calls to stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Baker, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.     Plaintiff Tyler Baker is a resident of Underhill, Vermont.

2.     Defendant AAG is a California registered corporation headquartered in Orange, California.  Defendant AAG conducts business throughout this District and throughout the United States.

**JURISDICTION AND VENUE**

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.     This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides in this District and the wrongful conduct giving rise to this case was directed from this District.

**INTRODUCTION**

5.     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.     The National Do Not Call Registry provides for consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

7.     A listing on the DNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

8.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

Class Action Complaint

## COMMON ALLEGATIONS

16.     AAG provides refinancing and reverse mortgage services to consumers nationwide.[3]

17.     In order to generate leads, AAG places telemarketing calls to consumers in order to solicit them for their services.

18.     Unfortunately, these calls are being placed to consumers without their express written consent, who do not have an existing business relationship with Defendant, and to consumers who registered their phone number on the DNC.

19.     Furthermore, Defendant lacks a sufficient stop call system that results in the Defendant continuing to place calls to consumers who have requested from the Defendant that the solicitation phone calls should stop.

20.     For example, in Plaintiff Baker's case, Defendant not only placed unsolicited calls to his phone number registered on the national do not call registry, but Defendant continued to call him despite that fact that he requested that the calls should stop.

21.     There are numerous complaints posted online regarding unsolicited calls that consumers received from AAG, including complaints from consumers who were unable to stop the unsolicited calls from AAG:

- "I tried to set up a reverse mortgage on my house and found their contract heavily in favour to their corporation.  The monthly income I was to receive off the equity in my house was pitiful.  I declined.  They kept calling me repeatedly.  Now I get these Robocalls that ring once, my Caller-ID tells me it's them.  They target senior citizens because they see them as natural-born suckers…"[4]
- "Called me before 8 a.m. I don't answer any callers if I don't recognize the caller, especially at that hour. They left no message…"[5]
- "A Michael McCollum called me from this number saying he was from AAG…"[6]

---

[3] https://www.aag.com/about-us/
[4] https://800notes.com/Phone.aspx/1-949-751-4598/6
[5] https://800notes.com/Phone.aspx/1-657-236-5500
[6] *Id.*

Class Action Complaint

- "Reported this number to the phone company and to call consumer affairs."[7]
- "Called and went to voice mail.  Received 3 minutes of hold music, no one came on.  I get this a couple of times a day, a few times a week."[8]
- "Called me several times a week. CallProtect has captured this number so it will not ring on my phone.  Guess someone reported it as telemarketer or spammer"[9]
- "Not interested, and unsolicited!"[10]
- "okay now this is the fifth call that I got since this morning they're calling from different numbers I asked them please just stop calling me put me on the list of no call I never requested for their services I mean this is ridiculous man I can't take it all day long…help…"[11]
- "Calls 3 – 5 times a day. Persistent…"[12]
- "Repeated call with no one at AAG on the line. Very annoying."[13]

22.    In response to these unsolicited calls, Plaintiff Baker files this lawsuit seeking monetary and injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF BAKER'S ALLEGATIONS

23.    Plaintiff Baker registered his cell phone number on the DNC on November 4, 2004.

24.    Plaintiff Baker's cell phone number is not associated with a business and is used for personal use only.

25.    On January 11, 2021 at 10:20 AM, Plaintiff Baker received an unsolicited call from Defendant from the phone number 802-359-9071 to his cell phone.

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] https://www.shouldianswer.com/phone-number/6572365500
[11] *Id.*
[12] https://findwhocallsyou.com/5202250131?CallerInfo
[13] *Id.*

4

26.     After a brief pause and a sound like the line was being transferred over to another agent, an employee came on the line and introduced the company as American Advisors Group.

27.     The employee was calling to solicit the services of AAG.

28.     Plaintiff Baker told the AAG employee that he was not interested and asked not to be called again.

29.     Despite this stop request, Plaintiff received additional unsolicited calls from Defendant, from the phone number 802-359-9071 to his cell phone on:

- January 11, 2021 at 5:11 PM
- January 12, 2021 at 11:30 AM
- January 12, 2021 at 4:12 PM

30.     None of these 3 calls were answered by Plaintiff and no message was left by the Defendant on Plaintiff's voicemail.

31.     On January 13, 2021 at 5:13 PM, Plaintiff Baker received another unsolicited call from Defendant from the phone number 802-359-9071 to his cell phone.

32.     After a brief pause and a sound like the line was being transferred over to another agent, an agent came on the line and introduced the company as American Advisors Group.

33.     The agent was calling to solicit the services of AAG.

34.     Plaintiff Baker asked the AAG agent to stop calling him.

35.     At 5:14 PM on January 13, 2021, Plaintiff Baker called 802-359-9071 back to confirm who was calling him.

36.     Plaintiff Baker heard an automated system that identified the company as American Advisors Group. He then hung up.

37.     Plaintiff received additional unsolicited calls from AAG, from phone number 802-359-9071 to his cell phone on:

Class Action Complaint

- January 14, 2021 at 10:43 AM
- January 14, 2021 at 4:58 PM
- January 18, 2021 at 6:00 PM

38.     None of these 3 calls were answered by Plaintiff and no message was left by the Defendant on Plaintiff's voicemail.

39.     On January 19, 2021 at 11:45 AM, Plaintiff Baker received another unsolicited call from Defendant from the phone number 802-359-9071 to his cell phone.

40.     After a brief pause and a sound like the line was being transferred over to agent, an agent came on the line and introduced the company as American Advisors Group.

41.     The employee said she was calling to solicit the services of AAG.

42.     Plaintiff Baker told the AAG employee that he wanted the calls to stop.

43.     Plaintiff then received another unsolicited call from the Defendant to his cell phone, from phone number 802-359-9071 on January 23, 2021 at 9:59 AM.

44.     This call was not answered and no message was left by the Defendant on Plaintiff's voicemail.

45.     On January 27, 2021 at 10:43 AM, Plaintiff Baker received another unsolicited call from Defendant from the phone number 802-359-9071 to his cell phone.

46.     After a brief pause and a sound like the line was being transferred over to an agnet, an agent came on the line and introduced the company as American Advisors Group.

47.     The employee was calling to solicit the services of AAG.

48.     Plaintiff Baker hung up the phone after confirming who was calling him.

Class Action Complaint

49.     On January 29, 2021 at 11:54 AM, Plaintiff Baker received another unsolicited call from Defendant from the phone number 802-359-9071 to his cell phone.

50.     After a brief pause and a sound like the line was being transferred over to an agent, an employee came on the line and introduced the company as American Advisors Group.

51.     The employee was calling to solicit the services of AAG.

52.     Plaintiff Baker hung up the phone after confirming who was calling him.

53.     Plaintiff Baker never provided his phone number to AAG or any of its agents or affiliates or otherwise consented to be called by them.

54.     The unauthorized solicitation calls that Plaintiff received from AAG, as alleged herein, have harmed Plaintiff Baker in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

55.     Seeking redress for these injuries, Plaintiff Baker, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited telemarketing telemarketing calls to telephone numbers that are registered on the DNC and otherwise prohibits companies from placing solicitation phone calls if they fail to implement adequate policies and procedures for maintaining an internal do not call list.

## CLASS ALLEGATIONS

56.     Plaintiff Baker brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any

12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) they obtained prior express written consent to call the person or the person's number in the same manner as Defendant claim they supposedly obtained prior express written consent to call Plaintiff or Plaintiff's number.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of Defendant) called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff.

57.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Baker anticipates the need to amend the Class definitions following appropriate discovery.

58.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

59.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendant AAG systematically placed multiple phone calls to Plaintiff and other consumers whose telephone numbers were registered

with the DNC without first obtaining clear and conspicuous consent to place the calls;

(b)   whether Defendant AAG's phone calls to Plaintiff and other consumers were placed for telemarketing purposes;

(c)   whether Defendant AAG placed phone calls to consumers after being instructed to stop calling;

(d)   whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(e)   whether Defendant's conduct constitutes a violation of the TCPA;

(f)   whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

60.   **Adequate Representation**: Plaintiff Baker will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Baker has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Baker and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Baker nor his counsel have any interest adverse to the Classes.

61.   **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Baker. Additionally, the damages

suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Registry Class)**

62.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

63.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

64.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

65.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive

telephone solicitations that is maintained by the federal government.

66.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one phone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

67.     As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

68.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Registry Class)**

69.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

70.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

71.     Defendant or their agents placed phone calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

72.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

73.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Baker individually and on behalf of the Classes, prays for the following relief:

74.     An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Baker as the representative of the Classes; and appointing his attorneys as Class Counsel;

75.     An award of actual and/or statutory damages and costs;

76.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

77.     An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

78.     Such further and other relief as the Court deems just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# JURY DEMAND

Plaintiff Baker requests a jury trial.

DATED this 22nd day of February, 2021.     Respectfully submitted,

**TYLER BAKER**, individually and on behalf of all others similarly situated,

By: */s/ Rachel E. Kaufman*
Rachel E. Kaufman (Cal Bar no. 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorney for the Plaintiff and the putative Classes*

Class Action Complaint